John DeARMON, Plaintiff-Appellant,

v.

CITY OF ST. LOUIS, a Municipal Corp., Defendant-Respondent.

John DeARMON, Plaintiff-Respondent,

v.

Richard SMITH d/b/a Richard Smith Contracting Company, Defendant-Appellant.

Nos. 36073 and 36074.

Missouri Court of Appeals, St. Louis District, Division Three.

July 1, 1975.

Sommers & Holloran, Inc., Michael D. Stokes, St. Louis, for plaintiff-appellant.

Marvin S. Wood, St. Louis, for defendant-appellant.

Jack L. Koehr, City Counselor, Judith Anne Ronzio, Asst. City Counselor, St. Louis, for defendant-respondent.

McMILLIAN, Judge.

This is a suit filed by plaintiff for real property damages caused by defendant Smith, a wrecking contractor (Smith), while the said defendant's employees were razing property adjacent to plaintiff's building. Plaintiff named as a co-defendant the City of St. Louis (City) on the theory that Smith at the time he damaged plaintiff's building was acting as an agent, servant, or employee of the City.

After the court sustained City's motion for a directed verdict at the close of plaintiff's case, subsequently the jury awarded plaintiff damages against Smith in the sum of $8500.00. From this award, Smith appeals. Plaintiff also appeals from the court's order which sustained City's motion for a directed verdict. We have consolidated the two appeals.

In Smith's appeal, the issues are whether the court erroneously (1) directed a verdict against defendant Smith on the issue of liability; (2) instructed on the issue of damages; (3) refused to permit defendant to show the cost of repairs to the damaged building; and (4) permitted an excessive verdict to stand, or alternatively permitted a verdict to stand which was the result of jury bias and prejudice. We affirm the

judgment in favor of plaintiff against defendant Smith.

Since Smith does not question the sufficiency of the evidence we shall set forth only those facts necessary for a disposition of this appeal.

On January 5, 1972, or December 28, 1971, employees of Smith's, while razing an adjacent, condemned building under a contract with City knocked a hole in the east wall of plaintiff's building. The hole extended from the foundation, either almost to the second floor, or covering both the first and second floors and the bottom of the third floor.

Plaintiff's expert witness fixed the reasonable market value of plaintiff's building before the accident between $8,000 and $10,000—after the damage had occurred, he testified the building had no value. Smith's expert testified that plaintiff's building had no value either before or after the accident because "there are no sales of such houses, no loans made."

Smith's attorney, during the time allotted to him to make his opening statement as to Smith's evidence, admitted not only that his employees damaged plaintiff's building but also his responsibility to pay plaintiff a certain sum, which he suggested to be $1,000. The court construed these statements to be an admission of liability, and, accordingly, directed a verdict on this issue.

■■■■ As a rule opening statements usually are not considered as judicial admission unless an attorney makes clear, unequivocal admission of fact, in which case they are binding on the party in whose interest they are made. *McCarthy v. Wulff*, 452 S.W.2d 164, 167 (Mo.1970). A mere statement or outline, however, of anticipated proof upon any one or more issues in the case is not to be regarded as a binding admission so as to either bind the party whose counsel made the statement or to dispense with the necessity of proof on the issue on the part of his adversary. *Bayer v. American Mut. Cas.*

*Co.*, 359 S.W.2d 748, 753 (Mo.1962). Unlike an evidentiary admission, an admission in an opening statement is a judicial admission and is conclusive.[1] So the question becomes, did Smith's counsel make a clear, unequivocal admission in his opening statement that his client was liable for the damage caused to plaintiff's building. We hold that Smith's defense as outlined in his opening statement was a clear, unequivocal admission of liability that was directed to a lessening of damages, not to the issue of liability. Thus we find this issue against defendant.

■■■■ Defendant argues that improper damage instructions were given. The court gave a modification of MAI 4.02, which required the jury to award the difference between the fair market value of the building before and after it was damaged. The court also gave MAI 16.02, the standard definition of fair market value. Defendant argues that MAI 4.01 (entitled "Measure of Damages—Personal and Property") should have been given.

The titles of the respective MAI's clearly state the kind of case to which each applies. MAI 4.02 is for "Property (damage) only." Notes on Use of MAI 4.02 state that it "should be used in cases involving the property damage only."

A recent Springfield case elaborates on the choice of MAI 4.02 over 4.01 when only property damage is involved. In *State ex rel. State Highway Commission v. Beaty*, 505 S.W.2d 147 (Mo.App.1974), the Highway Commission sought recovery for damages allegedly done to a bridge by defendant. On appeal from judgment for plaintiff, defendant argued that the trial court erroneously gave MAI 4.01 but should have given MAI 4.02, since the case involved property damage only. The court agreed and reversed plaintiff's judgment. The court recited the bold-face names of the two instructions and the Notes on Use which required strict compliance with all the re-

1. See McCormick, Evidence § 265 at p. 633 (2d Ed. 1972).

quirements of MAI. *State ex rel. State Highway Commission v. Beaty, supra.* The court rejected plaintiff's argument that if the more general MAI 4.01 is sufficiently clear to guide juries in cases involving both personal and property damage, it could not possibly mislead the jury when only property damage is involved. The court rebuffed plaintiff for implying that MAI 4.02 is not needed and should be ignored, after the Missouri Supreme Court, by promulgating a second edition of MAI (in 1969), determined that 4.02 was necessary and mandatory in property-damage-only cases. *State ex rel. State Highway Commission v. Beaty, supra,* at 154.

Rule 70.01(b), V.A.M.R. requires that an applicable MAI "be given to the exclusion of any other on the same subject." There is no doubt that MAI 4.02 is an applicable MAI here. There was no error in giving it to the jury.

We note that defendant's cases which seem to sanction use of MAI 4.01 in property-damage-only cases predate inclusion of MAI 4.02 (see page XIX of MAI 2d ed.). The only case not predating MAI 2d ed. involved *personal* injuries. *Reynolds v. Arnold,* 443 S.W.2d 793 (1969).

■ Defendant further argues that MAI 16.02 in defining "Fair Market Value" (a term used in MAI 4.02) handed the jurors "a roving commission to consider any 'use' of the property in bringing in their verdict."

The clear words of MAI 16.02 rebut this argument by instructing the jury to consider, "all the uses to which the property may best be applied or for which it is best adapted, *under existing conditions* and under *conditions to be reasonably expected in the near future.*" (Emphasis added.) There was no instruction error.

The court refused to allow Smith to elicit testimony concerning the cost to repair the damage to the building because the court said, ". . . the damages were so extensive that the only question involved was the value of the property before and after the damage. . . ."

Defendant argues that the trial court erroneously excluded evidence of the reasonable cost to repair plaintiff's building.

■ The general rule is that the measure of damages for injury to real property is the difference in value immediately before and immediately after the event causing the injury (diminution-in-value test). *Misch v. C. B. Contracting Co.,* 394 S.W.2d 98, 101 (Mo.App.1965). However, where damage to land or a building thereon can be restored to its former condition at a cost less than the diminution in value, cost of restoration becomes the measure. *Baker Companies v. Pasley Mfg. & Distributing Co.,* 413 S.W.2d 268, 273–274 (Mo.1967); *Beaty v. N.W. Elec. Power Co-op, Inc.,* 296 S.W.2d 921, 924 (Mo.App.1957).

Courts have said that the cost-of-repair test is an exception to be used only where the amount of damage is insignificant as compared to the value of the property as a whole and involves only a small part thereof. *Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co.,* 223 S.W.2d 100, 104–105 (Mo.App. 1949). It has been suggested that "courts tend to use the diminution test without hesitation in circumstances that suggest a very high restoration cost." Dobbs, Remedies, § 5.1, at 317 (1973). A court has held that it was improper to submit a case to the jury on the theory of cost of repairs because it was not shown that the damage was comparatively insignificant, considering the total value of the building. *De Long v. Broadston,* 272 S.W.2d 493, 497 (Mo.App. 1954).

In the case of *Curtis v. Fruin-Colnon Contracting Co.,* 336 Mo. 676, 253 S.W.2d 158, 164 (1952), Judge Hyde, after recognizing the general rule (diminution of value) said, "However, where damaged land or a building thereon can be restored to its former condition, at a cost less than the diminution in value, the cost of restoration may be recovered." He observed further that the restoration rule (cost-of-repairs) is ap-

plicable only to cases where the cost of restoration is less than the difference in value of the land before and after injury and can never be applied in any case where the cost of restoration is greater than the value of the building.

In our case Smith contends that the cost of repairs is the proper rule to be followed—because the damage was easily reparable, and that 11 rooms of the 13 rooms were intact. On the other hand, however, the testimony and the photographic evidence shows the damage to the building to be extensive, a large, gaping hole on the exterior wall that ran from the foundation to the bottom of the third floor. The hole exposed almost completely the two rooms involved.

For Smith to show that the cost of repair rule was the one to be followed he had to show that the damage to the building not only was insignificant compared to the value of the property as a whole, but also involved only a small part thereof. This he failed to do. Here the damage was significant and involved almost a third of the entire east wall from the foundation to the bottom of the third floor. In this posture while we believe the better practice would have been for the court to receive evidence as to the cost of repairs, for whatever light it may have shed on the diminution in value, we cannot condemn the trial court of error in following the diminution of value rule. First, because of the extensiveness of the damage; secondly, because of the permanent nature of the damages; and third, because as a matter of law the evidence showed the damage to the building to be significant.

Plaintiff's "expert" testified that plaintiff's property was worth $8,000 to $10,000 in an undamaged condition but had a "negative value" as damaged. Defendant's "expert" testified that plaintiff's property had no value even in its undamaged condition. The jury verdict was for $8,500, which defendant argues was either excessive or the result of the jury's bias and prejudice against defendant.

In considering the adequacy, inadequacy or excessiveness of a jury verdict, appellate courts view the evidence in the light most favorable to the verdict and must remember that the trial court has wide discretion in ruling on a motion for new trial. The jury's broad discretion in fixing the amount of award is conclusive on appeal unless the appellate court can say that the verdict is so shockingly and grossly excessive or inadequate that the amount of the verdict is due to passion and prejudice. *Boehmer v. Boggiano*, 412 S.W.2d 103 (Mo. 1967).

The case at bar is analogous to a condemnation case in which two experts differ as to the fair market value of the property taken. As long as the verdict falls within the range of values testified to at trial, an appellate court will not weigh the evidence in a jury trial. See *State ex rel. State Highway Commission v. Bopp*, 516 S.W.2d 38 (Mo.App.1974).

In light of these principles, we cannot say that the verdict was excessive.

As to bias and prejudice of the jury, an appellate court may not infer bias and prejudice from the size of the verdict alone. *Reynolds v. Arnold*, 443 S.W.2d 793 (Mo.1969), and cases cited therein; *Hager v. McGlynn*, 518 S.W.2d 173 (Mo.App.1974). In order to warrant reversal, there must have been some incident or occurrence at the trial, or some error committed, of such a nature as to engender bias, passion or prejudice. *McConnell v. Pic-Walsh Freight Co.*, 432 S.W.2d 292 (Mo.1968).

Here defendant points to no specific incident causing bias, passion or prejudice. The court's attitude toward defendant's "expert" Brune,—"I wouldn't believe him on a stack of bibles, but I am not saying that to the jury"—was aired out of the jury's hearing and, therefore, can have no bearing on the jury's verdict. The qualifications of plaintiff's expert witness go to

the weight of his testimony, not to its admissibility. Although it is true that property in the area of plaintiff's has declined in value, that fact was before the jury.[2]

The essence of defendant's contention is that the jury should have believed *his* expert and disbelieved plaintiff's expert. We have no power to reweigh such evidence, and rule this point against defendant Thomas.

Next we take up plaintiff's appeal against City. The issues for our decision are whether the trial court erroneously (1) permitted City to file an amended answer; and (2) refused to permit plaintiff to read into evidence admission against interest contained in City's abandoned pleadings. We affirm.

Plaintiff argues that the trial court abused its discretion in allowing the City to file an amended answer "three days before trial," which denied "for the first time" the agency relationship plaintiff pleaded in its petition. Plaintiff also contends that the trial court erred in not allowing plaintiff to read the City's original answer (now abandoned) as an "admission against interest."

The City argues that there was no abuse of discretion in the court's allowing the City to file an amended answer, especially since plaintiff refused to accept the court's offer of a continuance, thereby waiving any error with respect to the amendment. The City further argues that the trial court correctly prevented the reading of the City's original answer because it was made inadvertently and because it amounted to a legal conclusion rather than an admission of facts.

■ Rule 55.33(a) allows a party to amend its pleading "only by leave of court or by written consent of the adverse party" after the time for amending as a matter of course has expired.[3] Such leave "shall be freely given when justice so requires." The

function of such a rule is to enable matters to be presented that were overlooked or were unknown to party at the time he filed his original pleading. 6 Wright and Miller, Federal Practice and Procedure, § 1473 at 375 (1971).

■ The most frequent reason for denying leave to amend is that the opposing party will be prejudiced. Wright and Miller, *supra*, § 1487 at 428; see *Siedler v. Tamar Realty Co.*, 491 S.W.2d 566 (Mo.App. 1973). Factors which the trial court should consider are: hardship to the moving party if leave to amend is denied, the reasons for the moving party's failure to include the new matter in its original pleading and the injustice resulting to the party opposing the motion should it be granted. Wright and Miller, *supra*, § 1487 at 428.

■ Permission to amend rests in the trial court's discretion, which will not be disturbed on appeal unless there is a showing that such discretion has been palpably and obviously abused. *S—— v. W——*, 514 S.W.2d 848 (Mo.App.1974); *Kallenbach v. Varner*, 502 S.W.2d 446 (Mo.App.1973).

■ Here there was no abuse of discretion. The City first admitted that Smith was its agent but then, three days prior to trial, obtained leave to amend in order to deny agency. In ruling on plaintiff's motion to strike the City's amended answer, the court accepted the City's explanation that its counsel "simply missed" plaintiff's allegation of agency. The court asked plaintiff how he would be prejudiced. Plaintiff contended that he now would have to take defendant Smith's deposition "to see if any agency existed." The court offered to continue the case, but plaintiff refused the offer. The court correctly observed that it would be unjust to the City to bar it from asserting the defense of independent contractor merely because it originally overlooked that defense.

---

**2.** Defendant elicited the comment from plaintiff's expert that "I suppose it (the area in question) was going down; I don't think it was going up, in my opinion."

**3.** Rule 55.33(a) is identical to prior Rule 55.53(a) and to Federal Rule 15(a) in those respects which are vital to this case.

Plaintiff's claim of prejudice to this court is different from that in the trial court. Plaintiff tells us that, since the lawsuit was "over two years old at the time of trial" and since "plaintiff was an elderly man" (73 years old), the granting of a continuance—as offered by the court—"would have been unfair to plaintiff."

Plaintiff cites two cases in which it was held that the trial court did not abuse its discretion in refusing to permit amended pleadings.[4] Clearly these cases reinforce the wide discretion of the trial court to either allow or disallow amendments.

Plaintiff claims that the trial court erred in not allowing him to read into evidence City's original "admission" that defendant Smith was its "agent, servant and employee."

The general rules applicable to this question are easily stated but difficult to apply here. Abandoned or superseded pleadings may be admitted into evidence when they contain admissions against the pleader's interest. *Yeager v. Wittels*, 517 S.W.2d 457 (Mo.App.1974); see Simeone, Admissions of a Party-Opponent, 5 St.L.U.L.J. 469 (1959); Annot. 52 A.L.R.2d 516, 524–25 (1957). An admission in an abandoned pleading is not conclusive; *Bledsoe v. Northside Supply & Development Co.*, 429 S.W.2d 727 (Mo.1968), but is to be considered along with other facts and circumstances in the case, *Hall v. Denver-Chicago International, Inc.*, 481 S.W.2d 622 (Mo.App.1972). The pleading may be used if it contains admissions or statements of *fact* against the party who filed the pleading. *Hall v. Denver-Chicago International, Inc., supra.* However, legal conclusions in an abandoned pleading are not admissible as admissions against the pleader's interest. *Kelso v. C. B. K. Agronomics, Inc.*, 510 S.W.2d 709 (Mo.App.1974); *Macheca v. Fowler*, 412 S.W.2d 462 (Mo. 1967).

Is the statement that defendant Smith was "acting as agent, servant and employee of the defendant, City of St. Louis" an admission of fact or is it a legal conclusion?

In *Wors v. Glasgow Village Supermarket, Inc.*, 460 S.W.2d 583, 590 (Mo.1970), it was held that an allegation in a superseded pleading such as " '[T]he explosion was a direct and proximate result of the negligence of the defendants in the manufacture, distribution and handling of the soda . . .' " constituted a legal conclusion, not facts and therefore did not amount to admissions.

In *Wills v. Townes Cadillac-Oldsmobile, Inc.*, 490 S.W.2d 257, 260 (Mo.1973), it was held that a statement (in an answer to an interrogatory) that one McClary was acting within the scope of his employment was admissible as an admission against interest, even though it was a statement of an "ultimate fact," since the statement was:

". . . based on facts of which the declarant could be expected to have had knowledge of or knowledge available to it . . . ."

It has been held that extra judicial admissions are competent evidence even though in the form of conclusions as to the ultimate fact at issue. *Howell v. Dowell*, 419 S.W.2d 257 (Mo.App.1967) and authorities cited therein.

In light of the above, while we believe the admission of an agency relationship was a statement of an ultimate fact, which generally should have been admitted, we hold it is not determinative of the issue here involved.

Thus the question becomes, is an admission in an abandoned pleading made by mistake or accident admissible into evidence as an admission of a party proponent. Under the circumstances of this case, we think not. First, as was explained by counsel for City, the statement sought to be introduced in its original answer was made erroneously

**4.** *Central and Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc.*, 317 S.W.2d 841 (Mo.App.1958), and *Parson Construction* *Co. v. Missouri Public Service Co.*, 425 S.W.2d 166 (Mo.Sup.1968).

and inadvertently. Next, this assertion is supported by the balance of City's original answer, in which liability is categorically denied. Our attention is specifically drawn to City's denial of that allegation in paragraph number 5 in its original answer to plaintiff's amended petition, wherein City denied that it had exclusive control or the right of control over the demolition. Logically, if City had the control contended for by plaintiff then conceivably Smith was its agent. Thus the admission of agency was inconsistent with its denial. Consequently, we hold that where an admission contained in an abandoned pleading is made inadvertently and is thereafter corrected by an amended answer, it rests within the sound discretion of the court as to whether or not the abandoned pleading may be read as an admission of a party proponent. Obviously, this responsibility carries with it the duty of the trial court to make a determination, as was done herein, as to the circumstances under which the alleged mistake was made. And we will only reverse where it can be demonstrated that the trial court abused its discretion. In conclusion, both judgments are affirmed.

SIMEONE, P. J., and GUNN, J., concur.